Opinión disidente emitida por la
Jueza Asociada Oronoz Rodríguez, a la que se unen la Jueza Presidenta Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez.
En el caso de autos, una mayoría de este Tribunal concluye que la Autoridad de Energía Eléctrica (AEE o parte recurrida) no observó el principio de mérito y, atribuyéndose facultades que no le corresponden, determina que el candidato idóneo para el puesto no es el Ing. Edgardo Vázquez Báez (ingeniero Vázquez Báez), sino el Ledo. Luis M. Morales Tañón (peticionario). Del expediente surge claramente que la selección de la AEE no fue irrazonable ni arbitraria, y que no fue contraria al principio de mérito. Por entender que el peticionario no señaló prueba en el expediente que demostrara que la actuación administrativa no estuvo fundamentada en evidencia sustancial, y toda vez que no se configuran las razones por las cuales deba ceder la deferencia judicial hacia las determinaciones administrativas, respetuosamente disiento.
*558 I
Los hechos que iniciaron esta controversia se circunscriben, en esencia, a una convocatoria realizada por la AEE para la plaza de Presidente del Comité de Subastas B. Tras ello, se nombró un Comité de Evaluación (Comité) compuesto por tres miembros para seleccionar a la persona que ocuparía dicha plaza. El Comité, dentro de sus prerrogativas, entendió necesario “seleccionar una persona con los años de servicio, capaz de conocer las inquietudes del personal, que acelerara órdenes de compra por prioridad y que tuviera destrezas administrativas a nivel ejecutivo[,] así como experiencia en la evaluación de subastas, en la generación de órdenes de compra y contratos”(1)
Antes del proceso de entrevistas, el Comité estableció cuatro criterios que tendrían relevancia al momento de adjudicar la plaza: (1) experiencia administrativa a nivel ejecutivo; (2) experiencia en evaluación de subastas; (3) experiencia en el proceso de compras, y (4) años de experiencia en la AEE. Cabe enfatizar que el Comité razonó que para el puesto se necesitaba una persona técnica, por lo cual consideró necesaria la experiencia en evaluación de subastas, mas determinó que no era indispensable la experiencia en la etapa de adjudicación.(2)
Tras los trámites de rigor, el Comité evaluó cinco candidatos y creó una tabla comparativa de éstos. En dicha tabla se incluyeron los criterios que se utilizaron para adjudicar la plaza, a saber: si el candidato era veterano, la “preparación académica, licencias, colegiaciones, créditos universitarios relacionados, experiencia en compras y trabajo administrativo a nivel ejecutivo, años de servicio en la AEE, adiestramientos y seminarios, exámenes aprobados, destrezas o habilidades necesarias, reconocimientos, evaluaciones, asistencia y puntualidad, disponibilidad para el *559 trabajo y tiempo extra, historial disciplinario y contestaciones a preguntas relacionadas al puesto”.(3)
Culminado el proceso de evaluación, el Comité consideró que el peticionario y el ingeniero Vázquez Báez eran candidatos idóneos para el puesto. Sin embargo, al compararlos y evaluar todos los criterios, recomendó la adjudicación de la plaza de Presidente del Comité de Subastas B al ingeniero Vázquez Báez. Esta determinación fue confirmada por la Oficial Examinadora de la AEE, quien concluyó que no surgían
[...] hechos, circunstancias ni indicios de irregularidad en el proceso de evaluación de los candidatos o que indiquen la existencia de arbitrariedad o discrimen por razones prohibidas en la selección. El querellante no estableció, mediante prueba, que la recomendación y nombramiento del Sr. Vázquez Báez se fundamentara en consideraciones ilegítimas ni contrarias al principio de mérito.(4)
Subsiguientemente, la determinación de la Oficial Examinadora fue confirmada por el Tribunal de Apelaciones. Inconforme, el peticionario recurrió ante este Tribunal. Argumentó que la decisión de la AEE no estuvo basada en el principio de mérito, sino en elementos subjetivos y discrecionales de la agencia. Ello por entender que él era el candidato más idóneo por su preparación académica, experiencia, adiestramientos, habilidades y destrezas.
II
En la Sentencia emitida se expone de manera correcta la normativa relacionada a la revisión de las determinaciones administrativas. No obstante, debo enfatizar ciertos aspectos. Es sabido que la facultad revisora de este Tribunal en cuanto a las determinaciones administrativas es limitada, debido a que están cobijadas por una presunción *560 de corrección y regularidad. Por ello, debemos ser cuidadosos al intervenir con las decisiones administrativas ya que éstas merecen deferencia por parte de los tribunales. González Segarra et al. v. CFSE, 188 DPR 252, 276 (2013). En atención a este principio, la revisión judicial se circunscribe a determinar si la actuación de la agencia fue arbitraria, ilegal o irrazonable, de modo que constituya un abuso de discreción. Otero v. Toyota, 163 DPR 716, 729 (2005).
La mayoría también indica de manera acertada que las determinaciones de hechos incluidas en las decisiones administrativas deben ser sostenidas por los tribunales, si están basadas en evidencia sustancial que surja de la totalidad del expediente. Rebollo v. Yiyi Motors, 161 DPR 69, 76 (2004). Es importante recalcar que el concepto “evidencia sustancial” no exige que la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador. Ramos Román v. Corp. Centro Bellas Artes, 178 DPR 867, 883 (2010).
Además, los tribunales deben abstenerse de sustituir el criterio de la agencia cuando una determinación administrativa esté sustentada por evidencia sustancial que obre en el expediente del caso. Otero v. Toyota, supra. Asimismo, los tribunales no deben sustituir el criterio de la agencia administrativa por el suyo propio, excepto cuando la actuación administrativa sea totalmente arbitraria o se quebranten valores constitucionales fundamentales. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 DPR 521, 533 (1993). Por ello, hemos establecido que al impugnar las determinaciones de hechos de una agencia administrativa, la parte tiene el peso de probar que “ ‘existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración1 ”. (Enfasis suplido). Ramos Román v. Corp. Centro *561 Bellas Artes, supra, pág. 882. Véase Ramírez v. Depto. de Salud, 147 DPR 901, 905 (1999).
De otro lado, nuestra jurisprudencia dispone que las conclusiones de derecho de las agencias administrativas se pueden revisar en toda su extensión. Sin embargo, éstas no pueden descartarse libremente por lo cual merecen también deferencia por parte de los tribunales. Ramírez v. Depto. de Salud, supra, pág. 907.
Ello no significa una renuncia a la facultad revisora de los tribunales ni a nuestra capacidad para ofrecer un remedio frente a las actuaciones arbitrarias de las agencias administrativas. Como bien señala la mayoría, existen circunstancias en las que cede la deferencia judicial hacia las determinaciones de los entes administrativos: cuando no están basadas en evidencia sustancial; cuando la agencia erró en la aplicación o interpretación de la ley, y cuando ha mediado una actuación irrazonable e ilegal. González Segarra et al. v. CFSE, supra. De una lectura del expediente y de la ponencia mayoritaria se desprende prístinamente que ninguna de las tres circunstancias está presente en este caso, por lo cual no hay base legal para revocar la determinación de la agencia. Veamos.
III
Al aplicar el marco legal antes expuesto a la controversia ante nuestra consideración, la mayoría concluye que la determinación recurrida no fue razonable y —en contravención a la normativa— sustituye el criterio de la AEE por el suyo. A tales efectos, determina que el peticionario demostró ser el candidato más idóneo para ocupar el puesto de Presidente del Comité de Subastas B. Dicha determinación, sin embargo, no encuentra apoyo en la totalidad del expediente administrativo.
No hay controversia en que tanto el peticionario como el ingeniero Vázquez Báez cumplían con los requisitos para *562 el puesto de Presidente del Comité de Subastas B. El propio peticionario así lo reconoce. No obstante, según éste —avalado por una mayoría de este Tribunal— su experiencia en la adjudicación de subastas era su ventaja sobre el ingeniero Vázquez Báez y por ese hecho debió ser escogido para el puesto. En primer lugar, es importante mencionar que la plaza requería “cuatro años de experiencia y trabajos administrativos o de oficina adquiridas en áreas responsables con los procesos de compras y adjudicación de subastas de la Autoridad y ¡o en la elaboración de especificaciones para la compra de bienes y servicios”. (Enfasis suplido).(5)
El Comité consideró que el ingeniero Vázquez Báez, aunque no había participado en la adjudicación de subastas, en sus puestos anteriores en la AEE como Gerente de Proyectos de Construcción y Jefe de la Subdivisión de Proyectos Especiales emitía recomendaciones relacionadas con las subastas y participaba del proceso mediante la preparación de especificaciones para la compra de bienes y servicios. Por lo tanto, lo anterior le daba la experiencia necesaria para realizar la labor de adjudicar subastas. Al respecto, uno de los miembros del Comité declaró: “le da la experiencia porque él corrió todo, vino desde abajo hasta arriba”; “[p]orque corrió plazas donde se generan las órdenes de compra, que son mayormente, eh, la plaza de Ingeniero Supervisor de Instrumentos es en la Termoeléctrica y ellos generan órdenes de compra, evalúan subastas en la División, en el Directorado de Ingeniería ellos generan contratos y administran los contratos. Tenía, tenía experiencia”.(6)
Por su parte, la ponencia mayoritaria desaprueba que el Comité no le diera mayor importancia a la experiencia de los candidatos en la adjudicación de subastas y se enfoca en ese único criterio para concluir que la AEE erró al no *563 seleccionar al peticionario para la plaza en cuestión. Ello, a pesar de que el Comité, ente con expertise y conocimiento sobre las necesidades del puesto, precisó que dicho criterio no era indispensable. La AEE explicó que gran parte de las subastas que se evalúan son sumamente técnicas.(7) Sobre el particular, indicó que la mayoría de las subastas que se evalúan están relacionadas a calderas, retubeo, centrales, lo que corrobora el carácter altamente técnico de las subastas y la necesidad de que la persona a quien se le adjudicara la plaza fuera conocedora de los procesos técnicos que se llevan a cabo en la agencia.(8) Ese mayor conocimiento, según el Comité, lo tenía el ingeniero Vázquez Báez, quien había evaluado compras y subastas durante años.(9)
La AEE expresó, además, que la adjudicación de una subasta es una responsabilidad de todos los integrantes del Comité de Subastas y que el conocimiento técnico del ingeniero Vázquez Báez es una herramienta valiosa para el buen desempeño de dicha función.(10) ¿Acaso este Tribunal conoce mejor la manera más eficiente de evaluar las subastas que se realizan en la AEE? ¿Conoce mejor que la AEE los criterios que son necesarios para el puesto de Presidente del Comité de Subastas B? A diferencia de la mayoría de este Tribunal, no encuentro irrazonables y tampoco ilegales las actuaciones de la parte recurrida.
Asimismo, conforme a la alegación del peticionario en cuanto a su idoneidad para el puesto, en la Sentencia emitida se concluye que la AEE violentó el principio de mérito que estaba obligada a respetar. No estoy de acuerdo. De entrada, conviene destacar que ni el peticionario ni la mayoría de este Tribunal señalan en qué consistió la alegada violación al principio de mérito. Este principio establece que los empleados públicos se deben seleccionar con aten *564 ción exclusiva a sus méritos, sin distinción de raza, color, nacimiento, edad, origen, o condición social, ni por ideas políticas o religiosas. Martínez v. Ofic. del Gobernador, 152 DPR 586, 596 (2000). En este caso, en virtud de dicho principio, se compararon todos los candidatos a base de las mismas características, en igualdad de condiciones y mediante elementos objetivos. Para ello se creó una tabla comparativa y cuatro criterios que consideraban las necesidades del puesto.
Tras el análisis, surgió que el ingeniero Vázquez Báez tenía más experiencia a nivel ejecutivo, más años de servicio en la AEE y vasta experiencia en el proceso de evaluación de subastas, así como en el proceso de compras. En detalle, el ingeniero Vázquez Báez tenía dos años de experiencia a nivel ejecutivo, mientras el peticionario tenía diez meses; el ingeniero Vázquez Báez contaba con 21 años y 9 meses de servicio en la AEE y el peticionario tenía 18 años y 5 meses. En relación con la experiencia en compras, el ingeniero Vázquez Báez tenía 12 años y 6 meses, mientras que el peticionario tenía 14 años de experiencia. Sólo en este último renglón el peticionario tenía un año y seis meses más de experiencia que el ingeniero Vázquez Báez.
Sin embargo, la leve ventaja en este único aspecto, se disipa al tomar en consideración que el peticionario tenía historial disciplinario en la AEE. Adviértase que el historial disciplinario de los candidatos fue uno de los elementos que evaluó el Comité. El ingeniero Vázquez Báez no tenía historial disciplinario, circunstancia de gran importancia para ocupar el puesto de Presidente.(11) Curiosamente, la mayoría de este Tribunal no lo entiende así y reduce a una nota al calce un criterio tan relevante para un puesto de semejante jerarquía. El expediente está huérfano de irregularidades, arbitrariedad o discrimen. Tampoco hay evidencia de que la determinación administrativa trastocó el principio de mérito.
*565 De otra parte, el peticionario argumenta que la parte recurrida no consideró la totalidad de la información que tenía ante sí sobre sus credenciales, sino que sólo evaluó los cuatro criterios que estableció presuntamente de manera arbitraria. Otra vez, este argumento pierde fuerza ante la prueba en contrario que surge del expediente administrativo.(12) El Comité tuvo ante sí el curriculum vi *566 tae del peticionario del cual surgía todo su historial profesional; también contó con la tabla comparativa preparada por el Comité, en la cual se exponían los detalles relacionados a licencias, reconocimientos y evaluaciones, entre otros. Así, tanto la Oficial Examinadora de la AEE como el Tribunal de Apelaciones concluyeron que la parte recurrida evaluó y tomó en cuenta las capacidades e historial del peticionario y del ingeniero Vázquez Báez.
En fin, el Comité determinó que el candidato más idóneo para el puesto era el ingeniero Vázquez Báez y para ello utilizó criterios objetivos y legítimos, los cuales surgen de memorandos y de una tabla comparativa de todos los candidatos. La Oficial Examinadora evaluó la selección del Comité a la luz del principio de mérito y concluyó que no hubo irregularidades, y que ésta se realizó conforme a derecho y a la normativa aplicable a la AEE. Posteriormente, el Tribunal de Apelaciones revisó la determinación de la Oficial Examinadora y mediante una fundamentada Sentencia concluyó que el peticionario no rebatió la presunción de corrección que cobija a las determinaciones administrativas. Coincido con todos los anteriores. Nuestra función no es seleccionar al candidato que quisiéramos —en el mejor de los casos por razones legítimas— sino revisar si la selección del *567 Comité fue razonable y estuvo basada en evidencia sustancial que surge del expediente administrativo. Todavía más, el efecto de la decisión que hoy toma la mayoría es separar al ingeniero Vázquez Báez como Presidente del Comité de Subastas, siete años luego de que fuera seleccionado como tal. Nótese que el puesto le fue adjudicado al ingeniero Vázquez Báez en el 2008.
En este caso, tras el estudio cuidadoso del expediente, estoy convencida de que la decisión de la agencia está basada en evidencia sustancial, no surge error en la aplicación o la interpretación de la ley y no se desprende una actuación irrazonable, ilegal o discriminatoria. En consecuencia, no se configura ninguna de las circunstancias por las cuales deba ceder la deferencia hacia las determinaciones administrativas.
Así pues, confirmaría la determinación del Tribunal de Apelaciones. No le corresponde a este Tribunal sustituir el criterio de la agencia por el suyo propio. La determinación de la parte recurrida fue razonable y está sustentada por la prueba detallada en el expediente. Sencillamente, el peticionario —más allá de una alegación acomodaticia en la que indica que era el candidato idóneo— no logró señalar prueba en el récord que demostrara que la actuación de la AEE no estuvo fundamentada en evidencia sustancial. De la misma manera, una mayoría de este Tribunal trastoca impropiamente la determinación de la parte recurrida sin fundamentar por qué no es razonable. Se aparta de normas firmemente establecidas sobre la revisión de determinaciones administrativas y revoca equivocadamente la decisión de la AEE. No puedo coincidir.

 Apéndice de la Petición de certiorari, pág. 132.

 íd„ pág. 133.

 íd., págs. 134 y 490.

 íd., págs. 151-152.

 íd., pág. 372.

 íd., págs. 349-350.

 Alegato en oposición a la expedición de auto de certiorari [de la AEE], pág. 3.

 íd., pág. 4.

 íd.

 íd., pág. 19.

 íd., pág. 20.

 De la declaración de uno de los miembros del Comité Evaluador, el Sr. Confesor Vega Maisonet, surge que dicho Comité consideró todo el historial de cada uno de los candidatos. Transcripción de la vista administrativa de 27 de enero de 2012, Apéndice, págs. 374-378:
“Ledo. César Rosado:
“P. Ya usted dijo que era necesario tener experiencia en adjudicación de subasta, pero a preguntas nuestras usted indicó que no habían evaluado eso de, no pudieron haber evaluado [...] ¿No evaluaron eso en relación al señor Morales Tañón y al señor Edgardo Vázquez?
“R. Eh, te puedo contestar sí y no.
“P. ¿Por qué? ¿Por qué?
“R. Porque tengo que explicar.
“P. Explíqueme.
“R. En mi experiencia y en la experiencia de los miembros de Comité, nosotros conocemos, conocíamos a cada uno de los candidatos y sabíamos de dónde habían venido el señor Morales, el licenciado, sabíamos que había venido del Comité de Subastas, y no le íbamos a hacer una pregunta de si le habían adjudicado una subasta si toda la Vitae [sic] de él hace adjudicación de subasta, sí muchas más. Y habíamos visto el del Ingeniero Edgardo Vázquez también yo lo conocía y en su experiencia como Superintendente de Proyectos también.
“P. ¿Pero cuando ustedes lo evaluaron no había adjudicado una subasta?
“R. Eh, eh, no, en sí, el que adjudica una subasta es el Comité. Nosotros recomendamos adjudicación como miembros.
“P. ¿Cómo usuarios?
“R. Como usuarios recomendamos adjudicación.
“P. ¿En ese sentido quién más tenía experiencia como adjudicando subasta en comparación a ambos es el licenciado Morales Tañón y es con muchísima más experiencia?
“R. Sí, es correcto, todo el tiempo ha sido [...]
“P. Todo el tiempo ha estado en este Comité Permanente e inclusive ha sido Presidente, ya eso lo hablamos. Pero lo importante es que, porque ustedes están buscando un técnico, pues en ese sentido quedaba como descartado [...]
Honorable Árbitro Bertha Mainardi:
No me haga preguntas alusivas. [...]
“P. Pero le pregunto si como usted estaba buscando noventa por ciento, noventa y, ustedes señalaron, el Comité determinó que el noventa, eh, por ciento de las subastas son para la adquisición de bienes o servicios técnicos. Y ustedes estaban buscando una persona técnica, ¿eso es correcto?
“R. Eso es así.
“P. Y en ese sentido, ¿descartaron al licenciado Morales Tañón?
“R. Es sí, no.
“P. Está bien.
*566 Honorable Árbitro Bertha Mainardi:
¿Quiere que se lo explique, licenciado?
Ledo. César Rosado:
“P. Sí, explíquelo.
“R. Este, cuando se evaluaron los cinco candidatos se tomó la experiencia entre los cinco candidatos, eh, el licenciado Luis Morales Tañón y el ingeniero Edgardo Vázquez Báez eran los candidatos idóneos para el puesto, cualquiera de los dos. Pero había que escoger uno. El problema es que teníamos disyuntivas, teníamos que escoger a uno, no podíamos escogerlos a los dos. Y ahí se aprobaron los cuatro aspectos estos que se dicen ahí, en el Memorando de Adjudicación, que fue la experiencia, eh, en el proceso completo, porque en el proceso completo de, de, de órdenes de compra cuando nace la orden y hay un pensamiento de que la orden se va a hacer, está en los usuarios. Y pasa a los usuarios, pasa hace la orden, hace el contrato [...]
“P. Eso, lo entendemos.
“R. Entonces por eso, entonces todo eso, entonces eso tuvo que ver tanto en la adjudicación. Pero si tú me dices [...]
“P. Por eso pero ...
“R. Los dos eran idóneos.